### W. L. Thompson v. The State.

No. 1813. Decided June 26, 1912.

Rehearing denied October 23, 1912.

**1.—Theft—Bailment—Charge of Court—Pledge for Debt.**

Under our law, one who has a lien upon property or is holding it as a pledge for debt does not become the owner of the property; and where, upon trial of theft by bailment, it became an issue as to whether the title of the property passed or it was merely pledged to secure a debt, the court should have submitted this issue to the jury.

**2.—Same—Charge of Court—Authority to Sell.**

Where, upon trial of theft of mules by bailment, there was evidence that the defendant had authority from the alleged owners to sell said mules and apply the proceeds to the payment of the note upon which the owners were security, the court should have submitted this issue to the jury.

**3.—Same—Evidence—Moral Turpitude.**

Upon trial of theft, it was permissible on cross-examination of defendant to show that he was charged with seduction, but it was not permissible to show that the woman he seduced was a little girl, and other details.

**4.—Same—Argument of Counsel.**

Where, upon trial of theft, it was shown that defendant was indicted · for seduction and that the case was then pending, it ·was improper for the

district attorney to state in his argument that a man who could commit that character of crime would commit the crime of theft.

**5.—Same—Evidence—Misrepresentations.**

Where defendant represented that the owner of certain mules would take a mortgage on them and thereby procured signatures to the note to said owner, and it afterwards transpired that this was not the case, and the signers of said note tried to get a mortgage on said mules, etc., that fact could be shown, but other extraneous matter which shed no light on the transaction was inadmissible.

**6.—Same—Charge of Court—Bailment by Loan.**

Where the bailment was not for hire, but, if anything, was a loan, there was no error in the court's failure to charge on bailment for hire.

Appeal from the District Court of Hunt. Tried below before the Hon. R. L. Porter.

Appeal from conviction of theft of mule under bailment; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Looney, Clark & Leddy,* for appellant.—On the question of admitting evidence of extraneous crime, etc.: Gilbraith v. State, 41 Texas, 567; Buck v. State, 83 S. W. Rep., 390; Lee v. State, 73 S. W. Rep., 407; McIver v. State, 60 S. W. Rep., 50; Bryan v. State, 49 Texas Crim. Rep., 200, 91 S. W. Rep., 581; Lightfoot v. State, 106 S. W. Rep., 345; Neumann v. State, 58 Texas Crim. Rep., 248, 125 S. W. Rep., 28; Holland v. State, 5 Texas Crim. Rep., 27, 115 S. W. Rep., 48; Pace v. State, 58 Texas Crim. Rep., 90, 124 S. W. Rep., 949; Pridemore v. State, 59 Texas Crim. Rep., 563, 129 S. W. Rep., 1112.

On question of admitting representations of defendant concerning collateral matters to the main issue: Brittain v. State, 36 Texas Crim. Rep., 406; Campbell v. State, 62 Texas Crim. Rep., 561, 138 S. W. Rep., 607.

On question that the bailment was one of hiring: Neel v. State, 26 S. W. Rep., 726; Harrison v. State, 60 S. W. Rep., 963; Chamberlain v. Cobb, 32 Iowa, 161.

On question of the charge of the court that the agreement between the parties constituted a sale, etc.: Lang v. Rickmers, 70 Texas, 108.

*C. E. Lane,* Assistant Attorney-General, and *C. A. Sweeton,* District Attorney, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with theft by bailee, convicted and his punishment assessed at two years confinement in the penitentiary.

The record would show that appellant was desirous of purchasing a pair of mules from Mr. Ward, and, according to the State's evidence, represented to Messrs. Norris and Harrison that Ward would retain a mortgage on the mules, but desired additional security,

and upon that representation Norris and Harrison signed the note. A few days later, learning that Ward had not reserved any lien on the mules, but had accepted the note, with their names as sureties thereon in payment for the mules, Norris and Harrison went to appellant and requested him to give them a mortgage on the mules to secure them in having signed the note. This appellant declined to do, but offered to turn the mules over to them if they would pay the note. This offer they declined. This was on Monday, and when they parted that evening it was with the understanding that they would come back the next day (Tuesday) and appellant would perhaps give them a mortgage to secure them. Tuesday at noon they did return, and, appellant still declining to give a mortgage, they say they agreed to accept his proposition, that is, they take the mules, agreeing to pay the note. They further say that after this trade had been made appellant stated he had a contract to do some grading and if they would loan him the mules he would feed them, and could make some money out of the contract, and if he did do so, would pay it on an amount that he was due them, and Norris and Harrison say that it was with this understanding that they left the mules in possession of appellant. Appellant sold the mules on the following Saturday and returned to his home in Tennessee, getting for them $100 in cash, and a horse. The horse he left in a livery stable.

Appellant, in substance, testifies to the same facts, except he claims when he offered to turn the mules over to them if they would pay the note, Norris and Harrison again declined to take the property and assume the payment of the note, and told him he could keep the mules a while longer, and if he found a chance, to sell them and pay the note. He says he sold the mules to Horn and left the horse, and went on a trip to Tennessee, intending to return shortly. When he got to his mother's home he decided to remain and he wrote Harrison to sell the horse and apply the proceeds on the note, and he would send the remainder before the note became due. Harrison denied getting any such letter.

Ward testified he was present on Tuesday and first testified that it was his understanding that the mules became the property of Norris and Harrison, and appellant was to work them. On cross-examination he said that the trade was that the mules were to be held as security for the payment of the note.

The defendant asked a special charge that if the agreement was that the mules were to be held as security for the payment of the note, the title to the mules would not pass to Norris and Harrison, and in that event appellant would not be guilty of theft. Under the testimony of Mr. Ward this charge, or a charge presenting this theory should have been given. Under our law one who has a lien upon property or is holding it as a pledge for debt, does not become the owner of the property, and as under Mr. Ward's testimony

it was an issue as to whether the title to the property passed, or it was merely pledged to secure the debt, the issue should have been submitted.   Again, under appellant's testimony the question, even if he agreed and did deliver the property to Norris and Harrison, is raised as to his authority to sell them.   He testifies positively they told him to sell the mules and apply the proceeds to the payment of the note.   If they authorized him to sell the mules even though they belonged to them, it would not be theft, even though he failed to apply the proceeds on the note.   Under such state of facts he would be guilty of embezzlement, and not theft.   Special charge No. 2, or a charge presenting this issue should have been given.   Under appellant's and Mr. Ward's testimony the issues were squarely raised that there was no sale, but if a sale, he was given authority by the purchasers to sell; again, that the contract was but merely a pledge to secure a debt.

By bill of exceptions it is shown that while cross-examining appellant the question was propounded to him, "Are you not under arrest charged with seducing old man Burke's little girl?"   The fact that an indictment was pending against him for seduction was admissible as affecting his credit as a witness, but the question was hardly a proper one, and on another trial it should not be asked in that way. If it is desired to be proven that he is charged with seduction, that fact can be shown, but it should not be developed "that she was a little girl," or whose daughter she was.

Again, in his closing argument the district attorney said: "The defendant admits he is a married man, and he further admits he is charged with seducing a little girl, and a man who would commit that character of crime, would commit the crime of theft." While under our law it is always admissible to show that a defendant is charged with the crime of seduction or any other felony, if he testified in a case, to affect his credit as a witness, yet the presumption of innocence clings to the man until he is found guilty, and the fact he had been indicted, charged with seduction, raised no presumption that he was guilty of such an offense, and the district attorney erred in concluding and informing the jury that because he was charged with that offense he was necessarily guilty of it, and a man guilty of that character of offense would commit theft.   We nor the jury had any evidence that he was guilty of seduction, and when tried for such an offense, he may be adjudged not guilty, and, at least, in the eyes of the law he is presumed innocent until tried.   Such language was improper.

While it was permissible to show that appellant represented that Mr. Ward would take a mortgage on the mules in order to get Norris and Harrison to sign the note, because it is necessarily involved in the question of why they were so soon thereafter trying to get a mortgage themselves, but other representations about a farm, etc., would shed no light on the transaction and could serve no purpose

other than to prejudice the jury, and should not have been admitted. The prosecuting witness admitted they signed the note, and he was not prosecuted for any misrepresentations in getting them to do so, but for an offense said to have been committed subsequently, and on another trial only so much of the alleged prior transactions and conversations between appellant and the prosecuting witnesses will be admitted as relates to whether or not there was a representation in regard to giving Ward a mortgage.

This was not a bailment for hire, but if anything was a loan, and the court did not err in so holding and refusing the special instructions requested on this issue.

There are a number of other questions raised, but we do not deem it necessary to discuss them.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Rehearing denied October 23, 1912.   Reporter.]