Juan Rudy ENRIQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 41061.

Court of Criminal Appeals of Texas.

Feb. 14, 1968.

Rehearing Denied April 3, 1968.

Walter R. Long, Karnes City, Marvin Foster, Corpus Christi, for appellant.

J. Taylor Brite, Jourdanton, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is murder; the punishment, death.

■ Appellant's first ground of error, not supported by authority, is that the court erred in declining to consolidate this case with another murder case against this appellant, the indictment for which was pending in another county. We have concluded that there could be no possible merit in this contention since the court in the instant trial had no jurisdiction to try the murder case committed in the other county, because no exceptions to the general venue statute here exist.

■ Appellant's next ground of error is his claim that the trial court erred in failing to grant his combined motion to quash the venire and change the venue. We need not pass upon the question of whether or not Article 28.01, Sec. 1(7), Vernon's Ann. C.C.P. was complied with because it is apparent that the question of change of venue has become a question of constitutional dimension under the recent decisions of the Supreme Court of the United States in Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663; Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543; and under the decision of our Fifth Circuit Court of Appeals in Pamplin et al. v. Mason, 364 F.2d 1. With this in mind we will discuss in detail the combined questions of change of venue and the impropriety of the sheriff's summoning of the prospective jurors in the light of Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424.

At the outset we observe that at no place in this record was there introduced independent evidence as to newspaper, radio or television coverage of the instant case. The most that can be said is that a good number of the venire testified that they had read or heard something about this homicide at the time of its commission. What they had seen or heard is not shown. Two additional factors should be borne in mind. Neither the deceased nor the appellant was a resident of or known in Karnes County where this trial took place. The homicide merely occurred in said county. The second factor to be remembered is that the homicide occurred on April 25, 1966; the indictment was returned May 3, and the

trial began after numerous pre-trial hearings and postponements on October 3.[1]

Though a number of veniremen were excused because they stated at one stage of their examination that they had an opinion as to appellant's guilt, a careful examination of the approximately 1500 pages relating to the jury selection reveals that the trial court in *this* case exercised extreme caution and excused many of the venire, who under usual and accepted practice would have been selected, because their opinions were uncertainly formed and the prospective jurors stated that they felt they could set aside any opinions they might have formed and try the case purely on the evidence adduced from the witness stand.

■ Appellant complains of the association between the sheriff and the veniremen picked by him at the court's instructions, citing Turner v. Louisiana, supra. There are two reasons why this association is not one within the meaning of Turner. First, the sheriff's testimony at the trial was not of the same critical import as the testimony of the deputy sheriff in Turner, supra. See Bowles v. State of Texas, 5 Cir., 366 F.2d 734, and Crawford v. Beto, 5 Cir., 385 F.2d 156. Secondly, the association complained of occurred at such a time so that appellant's voir dire examination of each venireman selected by the sheriff demonstrated that no prejudice permeated the jury who tried appellant.

■ By an additional motion appellant challenged the array in two respects. First, he contends that the trial court erred in not calling a special venire. During the pre-trial hearings the court repeatedly gave appellant's counsel his option to suggest how the jury should be formed, and counsel repeatedly declined to indicate to the court whether he wanted a special venire or not. He admittedly expressed no desire for a special venire, stating that he intended to object to any method of selection the court utilized. No error is shown. Article 34.01, Vernon's Ann.C.C.P.

■ Appellant also contends that racial discrimination was evidenced in the selection of the grand and petit jurors. No history of racial discrimination was shown. Those of us charged with the administration of criminal justice in this State learned our lesson fourteen years ago when the Supreme Court of the United States handed down its decision in Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L. Ed. 866.[2] The only records available for Karnes County show that since 1963, of the 732 petit jurors selected in said county, 72 have had Mexican American surnames; of the 112 grand jurors, there were 12 with Mexican American surnames, and of the 34 jury commissioners, six were identifiable as such. There were no statistics as to the percentage of Mexican Americans in said county, and each of the witnesses called stated that he or she did not know what percentage of the population of the county bore Mexican American surnames or were of Mexican American origin.

As to this case, one Mexican American served on the jury commission which selected the grand jury that indicted appellant, and which selected a portion of the panel from which were drawn the names of those

1. Though not cited by appellant, we here deem it advisable to point out that in Rogers v. State, 155 Tex.Cr.R. 423, 236 S.W.2d 141, this Court reversed a conviction because of the court's failure to change the venue where the record contained highly prejudicial and inflammatory newspaper articles covering the entire 32 days which elapsed between the homicide and the trial, together with a showing that there was wide radio coverage during such period and the proof that deceased was a popular local police officer and appellant was also a resident of the county where the trial was had. As pointed out above, none of these factors appear in the case before us here.

2. This case was reversed primarily because there was a showing that members of accused's race constituted a separate class in the county where he was prosecuted and that no member of such class had served on the jury commission, the grand or petit juries for 25 years prior to the prosecution of accused.

who served as jurors at appellant's trial. At least 29 people whose names were patently Mexican American were among the combined lists from which appellant's jury was drawn. Twenty-four were excused by the court for the various reasons that they had (1) an opinion that appellant was guilty, (2) an opinion as to his guilt or innocence (3) an inability to understand the English language, (4) conscientious objections to the infliction of the death penalty, (5) failed to meet the statutory requirements of being a freeholder. To none of these excuses did appellant object. Four were peremptorily excused by the State and one by the appellant.

■ Another ground of error is based upon the opinion of our United States Court of Appeals for our Fifth Circuit in Rabinowitz v. United States, 366 F.2d 34.[3] Appellant contends that he has brought this case within the rule there announced. Appellant's counsel and Jury Commissioner Lillian Gabrysch exchanged the following question and answer concerning the type of people she selected for the petit jury:

"Q. (Appellant's counsel) You mean strong people, people that were intelligent and affirmative and aggressive.

A. (The witness) Yes sir, that knew what they are thinking about."

Later in her examination the witness stated that she had been instructed by the court to select people of good moral character, and she tried to comply with such instructions. Appellant by this showing alone has failed to establish that the rule in Rabinowitz, supra, was violated.

■ After some of the panels for the week in the court's term had been exhausted, the sheriff was then instructed by the court to summon additional veniremen. Appellant complains of this manner of selection of the remainder of the panel.

There can be no merit in this contention because the court offered to have additional unused panels for the term opened and summoned, and appellant objected, thereby leaving the court with no alternative but to act as he did in compliance with the terms of Article 34.01, Vernon's Ann. C.C.P., and the holding of this Court in Taylor v. State, Tex.Cr.App., 420 S.W.2d 601.

■ Appellant asserts as another ground of error that the trial court erred in admitting what he terms extraneous offenses. The murders allegedly committed by appellant within a few hours prior to the instant homicide were clearly admissible under the holdings of this Court in Ellisor v. State, 162 Tex.Cr.R. 117, 282 S.W.2d 393, and the murder committed by him within an hour after this homicide was clearly admissible under our holdings in Cox v. State, 170 Tex.Cr.R. 128, 338 S.W.2d 711; Lassiter v. State, 135 Tex.Cr.R. 352, 120 S.W.2d 262; and Chadd v. State, 114 Tex.Cr.R. 1, 23 S.W.2d 373.

■ Still another ground of error is that the court allegedly unduly participated in the voir dire examination of the panel. We have examined each instance in which the court attempted to explain to the veniremen the questions which were being propounded to them, and find that such explanations were clearly authorized under our recent holding in Ash v. State, Tex.Cr. App., 420 S.W.2d 703.

Appellant asserts that the Texas murder law is unconstitutional, and relies upon Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620. In that case the Supreme Court of the United States held that a New York statute which permitted the incarceration of one class of persons without a jury trial while other statutes accorded jury trial for another class constituted a denial of equal protection. We have no

---

3. The holding in such case is that a Federal Jury Commissioner might not extend the Federal statutory qualifications for jurors to include his own idea as to what such qualifications should be.

such situation here, as all felons are accorded a jury trial in this state.

 By reference to pages in the record where motions were made and without citation of authority, appellant makes the following contentions. In one motion he contends that the court erred in allowing the State to challenge a prospective juror on the sole grounds that he had conscientious scruples against the infliction of the death penalty. In the recent case of Ellison v. State, Tex.Cr.App., 419 S.W.2d 849, we overruled such a contention and cited the applicable statute.

 By further reference to motions, he contends that the court erred in failing to respond to his motion to require the State to provide him prior to trial all information in the possession of the State relating to prospective jurors. We find no merit in this contention.

 Still another motion complains of the overruling of his motion for mistrial based upon the ruling of the court in which he permitted the jury to separate at night prior to the receipt of the court's charge and prior to the time they began their deliberations. This motion was made after the final member of the jury had been selected. Article 35.23, Vernon's Ann.C.C.P. specifically authorized the trial court to permit the jury to separate and we find no merit in the motion.

 Another ground of error is that the court impaneled the final juror without appellant's having accepted him. We have examined the testimony of the prospective juror, and do not find that he was subject to a challenge for cause. At the time the juror was sworn, appellant had exhausted all his statutory peremptory challenges and two additional challenges tendered appellant by the court as a matter of precaution. We find no merit in this contention.

In that portion of appellant's brief in which he complains of the court's charge, we find no authorities cited. We have ex- amined the charge as a whole and find it substantially as suggested in Willson's Criminal Forms, 7th Edition, Section 3534. We find no error therein.

Finding no reversible error, the judgment is affirmed.